IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

KENDALL C. NICKELSON                                                                      PLAINTIFF
ADC #150640

v.                                  No: 2:23-cv-00110-LPR-PSH

CHRISTOPHER BUDNIK, *et al.*                                                           DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Kendall C. Nickelson, an inmate confined at the Grimes Unit of the Arkansas Division of Correction ("ADC"), filed this *pro se* 42 U.S.C. § 1983 action on April 26, 2023 (Doc. No. 2). Nickelson was subsequently granted leave to proceed *in forma pauperis* ("IFP") (Doc. No. 6). After screening Nickelson's amended complaint (Doc. No. 27), this Court allowed him to proceed with Eighth

Amendment excessive force and deliberate indifference claims against Sergeant Anterio Matthews and Lieutenant Daryl Brown in their individual capacities and a First Amendment retaliation claim against Warden Christopher Budnik in his individual capacity.  *See* Doc. Nos. 28 & 51.  His other claims have been dismissed.  *Id.*

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts (Doc. Nos. 41-43) filed by Matthews, Brown, and Budnik (the "Defendants"), claiming that Nickelson did not exhaust available administrative remedies with respect to his claims against them before he filed this lawsuit.  Nickelson filed a brief in response to the Defendants' motion (Doc. No. 49).  He was also allowed more time to conduct discovery on the issue of exhaustion and to file an amended response.  *See* Doc. Nos. 50 & 53.  His amended response was due May 5, 2024, but nothing has been filed.  For the reasons described below, the Defendants' motion for summary judgment should be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to

the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

The Defendants argue that they are entitled to summary judgment on Nickelson's claims because Nickelson failed to exhaust all available administrative remedies against them before he filed this lawsuit. In support of their motion, the Defendants submitted the declaration of Terri Grigsby Brown, the ADC's inmate grievance coordinator (Doc. No. 43-1 at 1-5); the applicable ADC grievance policy (*id.* at 6-36); a list of grievances filed by Nickelson (*id.* at 37); and a copy of Grievance DR-42-00471 (*id.* at 38-42).

### A.   *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate

has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id.*

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 43-1 at 10. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 11. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id.* at 10. Only one problem or issue may be grieved per grievance form. *Id.* An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 11. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 12. The problem solver or staff member investigates the complaint and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 12-13. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit either the pink or yellow copy of

his Unit Level Grievance Form as a formal grievance. *Id.* at 13. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 14. If a formal grievance is medical in nature, it is assigned a code and forwarded to the appropriate medical personnel for response. *Id.* at 15.

The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 15-16. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 17. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 17. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 18. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 19. The grievance policy

specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 24.

### B.  *Nickelson's Complaint Allegations*

Nickelson alleges that Sergeant Matthews ordered him to drop an object from his hand during a search on July 21, 2022. *See* Doc. No. 27 at 4.  He states that after he dropped the object and it broke, Matthews yelled at him and "used a full burst of OC (mace) spray on [him] without cause." *Id.*  Nickelson further alleges that despite his compliance with Matthews' orders, Brown did not intervene in Matthews' use of force and tased Nickelson in his lower back. *Id.*  He states that he was not aggressive, did not resist apprehension, or pose any threat to anyone else during this incident. *Id.*  Nickelson also alleges that Matthews and Brown refused to obtain medical treatment for injuries to his back and face after this incident. *Id.*  He further alleges that Warden Christopher Budnik retaliated against him by him by failing to properly process the grievance he wrote about Matthews and Brown and by transferring him to another unit. *Id.* at 6.

### C.  *Nickelson's Grievances*

In her declaration, Inmate Grievance Coordinator Brown states that she reviewed Nickelson's grievance file for any grievances relating to his claims in this lawsuit. Doc. No. 43-1 at 4, ¶24.  Brown states that she found only one grievance submitted by Nickelson between July 21, 2022 (the date of the incident with

Matthews and Brown) and April 25, 2023 (the date he filed this lawsuit): DR-22-00471. *Id.* at ¶27.

Nickelson submitted DR-22-00471 on July 28, 2022. Doc. No. 43-1 at 38-42. He grieved:

> On July 21, 2022 around 7:30 p.m. Lt. Brown and Sgt. Matthews came in 1 barracks upper tier to search inmate Harley that sleep next to me while doing so Sg. Matthews seen something in my hand and ask me to give it to him instead of me giving it to him I threw it on the floor and broke it. Then Sgt. Matthews sprayed me with OC spray on the back of my head and neck while at the same time Lt. Brown tased me in my back and side causing me to fall face first to the floor. I didn't show no aggression or threat towards neither one of them at all. Lt. Brown and Sgt. Matthews violated my 8th amendment right by using excessive force. I was in no way being aggressive or causing harm to anyone. The amount of OC spray and the deployment of a taser to my back at the same time was excessive. The fact that I was tased and sprayed when I posed NO threat is an obvious use of excessive force OC spray and a Taser is to be used by policy as a resort to handle threating inmates which I was not at anytime. By being sprayed and tased at the same time I suffered sever burning and back pain from falling from being tased. These guards also are in violation of AR-225 employee conduct standards section 21D and 21E. Lt. Brown also falsefied document on the incident report number 2022-07-88 stating that I continued being aggressive and resistance at which time he deployed his taser to my abdomen area. Daryl S. Brown is a Lt. and know that its wrong and against policy to violate amendments, AR and falsefy documents.

*Id.* at 40.[1] Nickelson received a response to his Step One grievance and proceeded to Step Two on July 31, 2022. *Id.* The warden responded on August 29, 2022,

---

[1] Grievances are transcribed verbatim without any corrections for misspellings or mistakes.

stating that an internal affairs investigation had been conducted and found the use of force by Matthews and Brown to be justified and within departmental policy. *Id.* at 41. Nickelson appealed the following day, stating, "I disagree that being tazed and maced at the same time is justified especially when I posed no threat to anyone." *Id.* The appeal was rejected because Nickelson did not submit his original grievance and wrote his appeal in pencil instead of ink.[2] *Id.* at 39, 42.

### C. Exhaustion of Nickelson's Claims

#### 1. Exhaustion of Deliberate Indifference and Retaliation Claims.

Grievance DR-22-00471 describes Nickelson's excessive force claims against defendants Matthews and Brown. It does not describe his claim that they were deliberately indifferent to his medical needs, and it does not describe a retaliation claim against Warden Budnik. It therefore does not serve to exhaust those claims. Accordingly, Nickelson's Eighth Amendment deliberate indifference claims against Matthews and Brown and his First Amendment retaliation claim against Budnik

---

[2] The rejection of appeal document from the Chief Deputy Director indicates that the appeal was rejected because Nickelson did not send the proper attachments, i.e., Attachments I and III. It does not indicate that the appeal was rejected because it was written in pencil. See Doc. No. 43-1 at 42. However, comments within inmate grievance documentation related to this grievance and produced by the Defendants indicate that the appeal was rejected because "Inmate has submitted a copy of Attachment I and Attachment III. Inmate failed to submit *original forms*. Also appeal is filled out in pencil. Grievance forms are legal forms, as policy states, must be filled out in blue or black ink." *Id.* at 39 (emphasis added).

should be dismissed without prejudice for failure to exhaust available administrative remedies.

    2.    <u>Exhaustion of Excessive Force Claims</u>.

The Defendants argue that Grievance DR-22-00471 does not serve to exhaust Nickelson's excessive force claims against Matthews or Brown because he did not follow the grievance procedure to completion by properly completing his appeal. Doc. No. 42 at 8. The ADC's grievance procedure requires the original grievance form to be submitted with an appeal and that such appeal be written in ink, if available. *See* Doc. No. 43-1 at 11 & 17.

In his brief filed in response to the Defendants' motion, Nickelson states that he started the grievance process at the Delta Unit but was then transferred to the Grimes Unit, where he did not initially have all his property. Doc. No. 49 at 1. He states that he received a copy of his grievance via mail from the Grimes Unit, asked an officer for a pen to fill out his appeal, and was given a pencil instead. *Id.* He also claims that this unnamed officer did not give him a copy of the grievance procedure he asked for. *Id.* He does not deny that he failed to provide the originals of Attachments I and III or that he wrote the appeal in pencil.

Nickelson also asserted in his brief that he needed more time to gather evidence to respond to the Defendants' motion for summary judgment. *Id.* at 2. The Court gave him additional time to do so and lifted the stay on discovery as it relates

to the issue of exhaustion.  Nickelson did not come forward with any evidence to show that he was unable to properly complete the appeal to DR-22-00471.

To the extent Nickelson claims the grievance procedure became unavailable to him after he was transferred, his availability argument fails.  An inmate need only exhaust *available* administrative remedies. *East v. Minnehaha Cty.*, 986 F.3d 816, 821 (8th Cir. 2021).  "Administrative remedies are not available if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016)).  Administrative remedies may also be unavailable if prison officials prevent inmates from utilizing the grievance procedures or fail to comply with such procedures.  *See Gibson v. Weber*, 431 F.3d 339 (8th Cir. 2005); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001).

As set forth above, Nickelson claims in his unsworn statement/brief that he only had a copy of his original grievance and that he was refused a pen to complete his appeal.  He does not explain any other efforts he made to obtain his original grievance or a pen to properly complete his appeal, or make any claims that he was otherwise thwarted by prison staff.  The Step Two response is dated August 29, 2022, and his appeal is dated August 30, 2022 – although he had five working days to

submit his appeal, he submitted it immediately and improperly.³  Nickelson has not come forward with any evidence to support his claim that he was unable to properly complete the appeal to his grievance.⁴  Accordingly, the Court finds that the grievance procedure was available to Nickelson, but he did not properly complete a grievance regarding his excessive force claims against Matthews or Brown.  They are therefore entitled to summary judgment for failure to exhaust.

### IV.  Conclusion

The undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 41) be granted, and Nickelson's claims against the Defendants be dismissed without prejudice due to his failure to exhaust available administrative remedies.

DATED this 22ⁿᵈ day of May, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

³ Nickelson did not state in his appeal that he lacked an original or a pen to complete his appeal.  *See* Doc. No. 43-1 at 41.  He also did not file a subsequent grievance regarding his inability to properly complete his appeal.  *Id.* at 38.

⁴ A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.")).